UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN ESPINOZA MARTINEZ | No. 25 CR 637<br><br>Judge Joan H. Lefkow |

**GOVERNMENT'S SURREPLY TO DEFENDANT'S MOTION FOR IMMEDIATE DISCLOSURE OF IDENTITY OF SOURCE OF INFORMATION**

The United States of America, by ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits its surreply to defendant's October 16, 2025 motion:

Defendant's response does not seriously dispute that SOI-1 validly fears retaliation from defendant Juan Espinoza Martinez and the Latin Kings for reporting the $10,000 bounty for killing Victim A. Instead, defendant continues to rely on a case that has no application here, *Rovairo v. United States*, 353 U.S. 53 (1957), and now argues that an informant's name, like that of SOI-1, is *Brady* material that must be disclosed immediately in a criminal prosecution.

Defendant's argument has been rejected by repeated decisions across the federal courts permitting the government to delay disclosure of an informant's identity until shortly before at the time of testimony, where the informant fears retaliation and those fears are not irrational, regardless of whether a defendant contends the source's name is in and of itself is *Brady* or *Giglio* material. *See, e.g.*, *United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995) (affirming district court's decision to delay disclosure of witness identity until the morning of his testimony on

the third day of trial where "[n]ot only did other members of the conspiracy remain at large, but evidence … also suggested that [defendants] were members of the "Gangster Disciple' street gang, whose members [the witness] also feared"); *United States v. Harris*, 542 F.2d 1283, 1291 (7th Cir. 1976) ("The district court did not abuse its discretion by refusing to do so [order a witness list before trial] in this case. The government did not wish to reveal this information because of physical danger to witnesses as well as the possibility of threats and intimidation."); *United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir. 1983) (reversing district court's order to immediately disclose government witness's identity and explaining that "assuming the requested information [the names and addresses of any government witnesses who had been offered immunity and/or leniency for their cooperation, as well as the substance of any promises made to those witnesses by the government] is *Brady* material, appellees' due process rights to a fair trial would be satisfied in this case as long as disclosure is made the day that the government witnesses are scheduled to testify in court"); *United States v. Villareal*, 752 F. Supp. 851, 853 (N.D. Ill. 1991) (refusing to order disclosure of an informant's identity and explaining "[i]n any event, should informants be called to testify, he will be made aware of their identities at trial").

As already described in the government's response, defendant portrayed himself to SOI-1 as a member of the Latin Kings, showed SOI-1 materials that supported defendant's claims to being a member of the Latin King, including conversations about Latin Kings' activities and pictures of firearms, and defendant also communicated a $10,000 bounty for killing Victim A to SOI-1, attributing the

bounty to the Latin Kings. Defendant also acknowledged to law enforcement that he heard of the Latin Kings bounty on Victim A and then transmitted the message disseminating the bounty.

Additional information found on defendant's phone reinforces that SOI-1 has reason to fear retaliation from defendant and the Latin Kings. For example, on defendant's phone, law enforcement located messages in which defendant told Individual A: "my guys are ready in the vill," and then "saints, sds, and 2six being bitches." Law enforcement understands these messages to be defendant telling Individual A that the Latin King street gang ("my guys") were prepared to resist immigration officers in the Little Village ("the vill") neighborhood of Chicago, while their rival street gangs (*i.e.*, the Latin Saints, Satan's Disciples, and Two Six Nation) were not. Defendant further told Individual A: "they havent taken non from the vill," "n they wont," "Kings on they ass n the[y] scared," and "Chapo has our back bro. if they take one its gunna be bad," which law enforcement understands to be defendant stating his belief that immigration officers had not arrested people in the Little Village neighborhood because the Latin Kings had caused immigration officers to be fearful of conducting immigration activities in that neighborhood. Materials found by law enforcement in defendant's phone also show that he was engaged in conversations about the potential purchase of a firearm at the same time he was transmitting the $10,000 bounty for killing Victim A.

3

Defendant's reply twists the government's statements about its planned disclosure in this case. *See* Dkt. 32 at 4 ("The government claims it might even disclose the SOI's identity to defense counsel when the witness list is due, unless it changes its mind."). As previously stated in response, the government will fully comply with its discovery obligations in this case, including Rule 16, Jencks Act, *Brady*, and *Giglio*. The government has informed defense counsel of its intent to produce all reports related to SOI-1 documenting his statements to Homeland Security Investigations, as well as to make redacted versions (redacting SOI-1's name and identifiers) of SOI-1's immigration file and criminal history available to defense counsel in discovery. The government also intends to produce a redacted copy of SOI-1's grand jury testimony to defendant in discovery.

Defendant yet claims that SOI-1's name itself is *Brady* material that must be turned over immediately. But he has not and cannot point to a single case for the proposition that a informant's name itself is *Brady* information that must be disclosed immediately, even where, as here, the government intends to produce SOI-1's prior statements, and redacted copies of SOI-1's immigration records, criminal history, and testimony. The cases defendant does cite only undermine his argument.

First, defendant cites *United States v. Villareal*, 752 F. Supp. 851, 852 (N.D. Ill. 1991). Defendant's reliance on this case is inconceivable. Citing *Villareal*, defendant argues, "the case law is clear that a witness's identity must be disclosed if the witness has favorable evidence to the defense," Dkt. 32 at 6, and further argues, "[t]o square its inconsistencies, the government conflates its judicial requirements to

4

provide a witness list to defense counsel with the constitutional obligations to provide favorable evidence to the accused," *id*. Defendant then quotes a sentence from *Villareal* that states, "to the extent that defendant's requests for witnesses seek disclosure of the identities of persons who can provide information favorable to the accused which is material to guilt, the government, pursuant to *Brady*, must furnish the defendant with the identities of these persons." *Id*. (quoting Villareal, 752 F. Supp. at 852). If that's where the *Villareal* opinion ended, defendant's reliance on this case might make more sense. However, in the two paragraphs immediately after the sentence quoted by defendant, the district court in *Villareal* laid out the remainder of the relevant legal framework, which makes clear this Court should reject defendant's motion:

> As for statements by government witnesses that qualify as impeachment materials, the government is under no obligation to disclose this information before trial. Further, the government is under no obligation at any time to provide impeachment evidence for non-witnesses.
>
> ### *III. Informers' Identities*
>
> The exception to the rule that the identities of persons involved in an investigation be disclosed is the identity of informers. Villareal asks for such disclosure in request twenty. Disclosure of informers' identities involves balancing a defendant's need to prepare an effective defense against law enforcement's and the public's need to protect the identity of informants. For that reason, "the defendant must demonstrate a genuine need for the informant's identity before the court requires disclosure." Villareal provides no support for the conclusion that he has a genuine need for informers' identities. In any event, should informants be called to testify, he will be made aware of their identities at trial. Request twenty is denied.

*Villareal,* 752 F. Supp. at 853. Thus, defendant's argument based on *Villareal* is based on a single sentence that he reads entirely out of context. In *Villareal*, the district court clearly explained that disclosure of an informant's identity may be delayed until trial notwithstanding *Brady* (and even allowed for the government to delay disclosure of impeachment information, i.e., *Giglio*, until trial). Here, the government is only seeking to delay disclosure of SOI-1's identity until closer to trial.

Next, defendant cites *United States v. Alex*, 791 F. Supp. 723, 729–30 (N.D. Ill. 1992). In *Alex*, the government sought to delay production of Jencks Act material and any information within the scope of *Giglio* until one week prior to trial based on fears of retaliation to certain witnesses. *See* 791 F. Supp. at 726, 730. In that case, the district court agreed that the government to produce Jencks Act material until as late as after a witness had testified if the government chose, but as for any information with the scope of *Giglio*, required the government to produce information this information approximately three weeks in advance of trial. *See id*. at 726 ("[T]he government represents that it will produce Jencks Act material one week prior to trial except in those situations where it fears harm to a witness. This is more than the government is obligated to do."); *see also id*. at 729–30 ("The government is directed to provide the defendants with all *Giglio* material on or before April 22, 1992."); *Alex*, 91 CR 00727-2 (N.D. Ill. 1992), Dkt. 43 (jury trial scheduled for May 4, 1992). Thus*, Alex* in no way supports defendant's claim that even though the government has made plain it will comply with its discovery obligations, he is entitled to immediate disclosure of SOI-1's name.

6

Finally, defendant cites *United States v. Delgado*, 2002 WL 1467653, at *1 (N.D. Ill. July 3, 2002). In *Delgado*, the government sought to delay disclosure of *Giglio* materials of a government informant who had tipped law enforcement to the shipment of narcotics, and who had played a significant role in planning and executing a narcotics transaction, until two weeks before trial. *See Delgado*, 2002 WL 1467653, at *1; *Delgado*, 2 CR 50002-04 (N.D. Ill. 2002), Dkt. No. 60 ("At the same time [two weeks before trial], the government is willing to produce any statements made by the informant and any information that may be used to impeach the informant."). There, the district court ordered that *Giglio* materials related to the government informant be produced approximately four weeks before trial. *See Delgado*, 2002 WL 1467653, at *2 (ordering disclosure by July 22, 2002); *Delgado*, 2 CR 50002-04 (N.D. Ill. 2002), Dkt. No. 64 (Jury trial schedule for Aught 19, 2002). Thus, here again, *Delgado* does nothing to support defendant's claim that he is entitled to immediate disclosure of SOI-1's name, where the government has already agreed to fully comply with its discovery obligations, including producing SOI-1's prior statements, and redacted copies of SOI-1's immigration records, criminal history, and testimony.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny the defendant's motion.

                                          Respectfully submitted,

                                          ANDREW S. BOUTROS
                                          United States Attorney

                           By:    */s/Bradley Tucker*
                                          BRADLEY TUCKER
                                          Assistant United States Attorney
                                          219 South Dearborn Street, 5th Floor
November 10, 2025                  Chicago, Illinois 60604